FILED

2012 Jul-26  PM 03:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | | |
|---|---|---|
| **RRE CRESTWOOD HOLDINGS, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:11-cv-01466-AKK** |
| | ) | |
| **CV APARTMENTS, LLC & PHILIP M. MULKEY,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff RRE Crestwood Holding, LLC[1] ("Plaintiff") brings this civil action against Philip M. Mulkey ("Mulkey") alleging breach of contract, money had and received, and unjust enrichment.  Doc. 1.  Plaintiff filed a Motion for Summary Judgment, doc. 15, which is fully briefed, docs. 16, 19, & 22, and is due to be **GRANTED**.

## I.  SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any

---

[1] On March 23, 2012, SJM Investments, LLC was substituted as a party-in-interest for RRE Crestwood Holdings, LLC.

material fact and the movant is entitled to judgment as a matter of law." To

support a summary judgment motion, the parties must cite to "particular parts of

materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations, admissions, interrogatory

answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and

upon motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). The moving party bears the initial burden of proving the absence of a

genuine issue of material fact. *Id.* at 323. The burden then shifts to the

nonmoving party, who is required to "go beyond the pleadings" to establish that

there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation

marks omitted). A dispute about a material fact is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the

evidence and all reasonable inferences arising from it in the light most favorable to

the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970);

*see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the

non-moving party's favor).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.  <u>FACTUAL BACKGROUND</u>[2]

### A.    Loan and Loan Documents

On November 30, 2007, Capmark Bank ("Capmark"), a Utah bank, loaned $11,000,000.00 (the "Loan") to CV Apartments, LLC ("CV Apartments"), doc. 17-1 at 2, 16, in exchange for two Promissory Notes in the amounts of $6,825,000.00, *id.* at 134, and $4,175,000.00 (collectively, the "Loan Agreement"), *id*. at 137.  The Loan had a maturity date of December 1, 2010, at which point Capmark had the right to demand the remaining payments.  *Id*. at 4-5. Mulkey guaranteed the Loan by executing three guarantees: a Full Payment and

---

[2] When evaluating the motion for summary judgment, the court resolves all factual disputes in Plaintiff's favor "when sufficient, competent evidence . . . supports Plaintiff's version of the disputed facts."  *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002).

Performance Guaranty ("Payment Guaranty"), an Exceptions to Nonrecourse Liability Guaranty ("Exceptions Guaranty"), and a Completion and Lien-Free Performance Guaranty ("Completion Guaranty"), (collectively, "Guaranty Agreements"). *Id*. at 140-159, doc. 19-2 at 1-9.

The Loan Agreement required CV Apartments to deposit a certain amount, described as a Performance Deficiency Satisfaction Amount, into a specified deposit account if CV Apartments failed to make timely payments and achieve a specific debt service coverage ratio on the 20th, 24th, 30th, and 36th payment due dates. Doc. 17-1 at 20. If CV Apartments failed to comply with the Performance Deficiency Satisfaction Amount obligation, the Loan Agreement triggered a default and became a full-recourse loan to the extent of the Performance Deficiency Satisfaction Amount. *Id*. at 72-73. Under the Guaranty Agreements, Mulkey "irrevocably and unconditionally guarantee[d] to [Capmark] the prompt payment when due, whether at stated maturity, by acceleration or otherwise, of all obligations and liabilities of [CV Apartments] under the Loan Agreement and other Loan Documents . . . ." *Id.* at 140-41. In addition to jointly and severally guaranteeing all obligations of CV Apartments to the extent of the Performance Deficiency Satisfaction Amount, Mulkey also personally guaranteed CV Apartments' continuing obligations under the Payment Guaranty, subject to a limit

of $159,175.00, plus any costs Capmark incurred for collection, including

reasonable attorney fees, court fees, and court costs. *Id*. at 142. Mulkey's

personal liability guarantee remains in "full force and effect and will be discharged

only if and when the Loan has been paid in full and all obligations under the Loan

Agreement and other Loan Documents have been fully performed . . . ." *Id*. at

141.

## B.    Default

On December 6, 2010, five days after the maturity date, Capmark demanded

immediate payment "for all amount due and owing under the Loan Documents,

including principle, accrued and accruing interest . . ., late charges, fees and costs

of collection."[3] *Id.* at 6, 160-63. When CV Apartments failed to pay, Capmark

assigned its rights, title, and interests to Plaintiff RRE on December 21, 2010. *Id.*

at 6, 164-68. The next day, Plaintiff notified CV Apartments of the assignment

and demanded immediate payment. *Id*. at 172-76. On March 2, 2011, Plaintiff

exercised its rights and remedies under the Loan Agreement by conducting a

"power of sale foreclosure of the mortgage securing the Loan," which raised

---

[3] Mulkey contends that the Capmark "froze[]" the Loan in June 2009 "although CV Apartments had made all required payments under the Loan as they became due . . . . As a result, CV Apartments was prevented from finishing 52 condominium units, which would have cost a total of approximately $550,000-650,000 to complete." Doc. 19 at 3; doc. 19-1 at 3.

$6,250,000.00. *Id*. at 7, 177-79.  Although the foreclosure sale resulted in a deficiency of $4,654,461.00, in its final demand letter on March 30, 2011, Plaintiff sought from CV Apartments the lesser Performance Deficiency Satisfaction Amount of $3,257,106.00 instead. *Id.* at 179.  Additionally, Plaintiff sent Mulkey a demand for a total recourse amount of $3,416,281.00, i.e., the Performance Deficiency Satisfaction Amount and the $159,175.00 due under the Payment Guaranty. *Id.*  Further, Plaintiff informed Mulkey that the amount would increase to account for collection costs, including attorney's fees, if he failed to pay. *Id.*

Despite the final demand letter, both CV Apartments and Mulkey failed to pay the amount due under the Loan and Guaranty Agreements.  As a result, on May 2, 2011, Plaintiff sued CV Apartments and Mulkey for breach of contract (Count I), money had and received (Count II), and unjust enrichment (Count III). Doc. 1.  When CV Apartments failed to answer or otherwise respond,  Plaintiff moved for entry of default, doc. 8, which the Clerk of Court entered pursuant to Federal Rule of Civil Procedure 55(a) on June 17, 2011.  Doc. 11.  Plaintiff also moved under Rule 55(b) for a default judgment in the amount of $3,257,106.00, and for post-judgment interest to continue to accrue until satisfaction of the judgment, doc. 9 at 2, which the court granted on August 15, 2011, doc. 14. Additionally, the court found "that CV Apartments breached its obligations under

the Loan Agreement by failing to meet the Performance Criteria and failing to

deposit the Performance Deficiency Satisfaction Amounts owed under the Loan

Agreement . . . . [and that Plaintiff] has suffered damages in excess of

$3,257,106.00, plus interest, which CV Apartments is obligated to pay under the

terms of the Loan Agreement . . . ." Doc. 14 at 6. Thereafter, Plaintiff litigated its

case against Mulkey and, on December 7, 2011, moved for summary judgment.

Doc. 15. Plaintiff asserted it had incurred $45,404.78 in attorneys' fees and

expenses and that as of November 29, 2011, the "amount owing under the Loan

Documents for which Mulkey is personally liable under the terms of the Guaranty

Agreements is $3,416,281.00." Doc. 17-1 at 9. As a result, Plaintiff asked this

court to enter a judgment against Mulkey for $3,461,685.78, plus post-judgment

interest. Doc. 16 at 18-19. Plaintiff subsequently assigned its interest in the loan

documents and the judgment to SMJ Investments, LLC. Doc. 24.

## III. <u>ANALYSIS</u>

Plaintiff contends that it is entitled to summary judgment "on its claims

against Mulkey for the amounts which he guaranteed under the Loan Documents,

as well as claims for attorney's fees." Doc. 16 at 11. Moreover, Plaintiff contends

that "[n]o genuine issue of material fact exists regarding Mulkey's failure to repay

the amounts for which he is liable (specifically, the Final Performance Deficiency

Satisfaction Amount and the Payment Guaranty Amount, plus costs) . . . . " *Id*. at

11-12.  For the reasons stated below, Plaintiff's motion is due to be **GRANTED**.

**A. Breach of Contract**

Under Alabama law, "[e]very suit on a guaranty agreement requires proof of

the existence of the guaranty contract, default on the underlying contract by the

debtor, and nonpayment of the amount from the guarantor under the terms of the

guaranty.  However, to recover under a conditional guaranty or continuing

guaranty, an additional element, notice to the guarantor of the debtor's default,

must be proved."  *Sharer v. Bend Millwork Sys., Inc*., 600 So. 2d 223, 225-26

(Ala. 1992) (quoting *Delro Indus., Inc. v. Evans*, 514 So. 2d 976 (Ala. 1987)).

Moreover, "a guarantor is bound only to the extent and in the manner stated in the

contract of guaranty."  *Pate v. Merchants Nat'l Bank of Mobile,* 428 So. 2d 37, 39

(Ala. 1983) (quoting *Furst v. Shows*, 215 Ala. 133, 137 (1926)).  When there is a

dispute about the terms of the guaranty, "it is generally recognized that the rules

governing the interpretation and construction of contracts are applicable in

resolving a question as to the interpretation or construction of a guaranty

contract."  *Layne v. Garner*, 612 So. 2d 404, 407 (Ala. 1992) (quoting *Pate*, 428

So. 2d at 39).  Therefore, "when the terms of a [guaranty agreement] are

unambiguous, the construction of the contract and its legal effect become a

question of law for the court." *Layne*, 612 So. 2d at 407 (quoting *Dill v. Blakeney*, 568 So. 2d 774, 777 (Ala. 1990)).  Additionally, "[w]hether a [guaranty agreement] is ambiguous is a question of law for the court."  *Id*. (quoting *Dill*, 568 So. 2d at 778).

Mulkey admits he "signed three guaranty agreements at the time the Loan was executed – 'Guaranty (Full Payment and Performance),' 'Guaranty (Exceptions to Non-Recourse Liability)' and 'Guaranty (Completion and Lien Free Performance).'" Doc. 19-1 at 2; doc. 17-2 at 5.  Moreover, it is undisputed that CV Apartments defaulted on the Loan, that this court entered a default judgment against CV Apartments on August 15, 2011, for $3,257,106.00, doc. 14 at 6, and that Mulkey has not fulfilled his obligations under the Guaranty Agreements or that the foreclosure sale resulted in a $4,654,461.00 deficiency, doc. 17-1 at 179. Therefore, the only issue for this court to resolve is whether Mulkey is correct that the terms of the Guaranty Agreements are ambiguous because "each Guaranty agreement represents the <u>entire</u> agreement between [Plaintiff] and Mulkey and fail[s] to incorporate the others by reference, thereby necessarily creating contradictory and dramatically different obligations."  Doc. 19 at 7.

The merger clauses in question state

> [t]his Guaranty is the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes and replaces all prior discussions, representations, communications and agreements (oral or written). This Guaranty shall not be modified, supplemented, or terminated, nor any provision hereof waived, except by a written instrument signed by the party against whom enforcement thereof is sought, and then only to the extent expressly set forth in such writing.

Doc. 17 at 147, 157; doc. 19-2 at 7. Based on this identical language in the three guarantees, Mulkey argues that two of the agreements merged into one of the other guarantees. Thus, Mulkey asserts that "without further discovery and depositions, the parties cannot determine which guaranty represents the 'final and complete' agreement among Plaintiff . . . and Mulkey as they were all signed on the same date with no reference to the exact time of signing. Enforcing all three without knowledge of exact time of execution would violate the purpose of the merger clause contained in each of the Guaranty Agreements." Doc. 19 at 9.

To support his argument, Mulkey relies on two cases – (1) *Ex parte Palm Harbor Homes, Inc.*, which provides that when "a contract contains . . . a merger clause, the agreement is deemed to be 'integrated,' such that evidence of prior or contemporaneous agreements shall not be admitted to contradict the terms of the agreement." 798 So. 2d 656, 660 (Ala. 2001) (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1309 (11th Cir. 1998)); and

(2) *Belmont Homes, Inc. v. Law*, 841 So. 2d 237, 240 (Ala. 2002) ("[w]hen a contract is integrated, 'no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter, or contradict the contractual writing.'  The merger rule applies as well to prior or contemporaneous writings as to oral agreements.'") (internal citations omitted).  However, Mulkey's reliance on these two cases is misplaced because both involve a single obligation and, in that respect, "[a] merger clause operates only to establish that a written agreement is a completely integrated document, into which *all prior and contemporaneous negotiations are merged*."  *Belmont Homes,* 841 So. 2d at 240 (emphasis in original).  Thus, when "two agreements cover the *same subject matter* and include inconsistent terms, the later agreement supersedes the earlier agreement." *Cavalier Mfg., Inc. v. Clarke*, 862 So. 2d 634, 641 (Ala. 2003) (emphasis added). In contrast, here, there are three different obligations and each guaranty relates to a different obligation – i.e., the first to full payment and performance, doc. 17-1 at 140, the second to exceptions to nonrecourse liability, *id*. at 150, and the third to completion and lien-free performance, doc. 19-2 at 1.  Because the Guarantee Agreements cover different obligations, the merger doctrine is inapplicable and the merger clauses here do not make the Guaranty Agreements ambiguous. Consequently, the Agreements are enforceable according to their terms and, as a

result, Mulkey is obligated to pay $3,257,106.00 for the Performance Deficiency Satisfaction Amount, $159,175.00 pursuant to the Payment Guaranty, and costs including attorney's fees.  Doc. 17-1 at 179.   Accordingly, Plaintiff's motion for summary judgment on the breach of contract claim is **GRANTED**.

## B. Money Had and Received and Unjust Enrichment

In Counts II and III, Plaintiff pleads money had and received and unjust enrichment claims respectively.  Doc. 1 at 9-10.  "The essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant *holds* money which, in equity and good conscience, belongs to plaintiff or *holds* money which was improperly paid to defendant because of mistake or fraud."  *Hancock-Hazlett General Const. Co., Inc. v. Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986) (emphasis in original).  As stated previously, it is undisputed that Mulkey guaranteed the loan.  Doc. 17-1 at 137, 140-159.  Moreover, it is also undisputed that CV Apartments defaulted, doc. 14, and that Mulkey has failed to pay the amounts he guaranteed, doc. 17-1 at 160; doc. 17-2 at 8.  Thus, Mulkey is holding money that Plaintiff is entitled to and, as such, Plaintiff is equitably entitled to recover the amounts Mulkey guaranteed.  Accordingly, Plaintiff's motion for summary judgment on Counts II and III is **GRANTED**.

## C.  Plaintiff is Entitled to an Award of Attorneys' Fees and Costs

Plaintiff seeks also to recover attorneys' fees and costs from Mulkey.  Doc. 16 at 16.  "In Alabama, attorneys' fees are recoverable only where authorized by statute, when provided [for] in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which fees may be made."  *James v. James*, 768 So. 2d 356, 360 (Ala. 2000); *see also Knight v. Hired Hand Green, Inc*., 775 So. 2d 218, 222 (Ala. Civ. App. 2009) (finding that plaintiff was "entitled to an award of interest on the past-due balance and an attorney fee for collection of that balance, pursuant to the clear terms of the contract.").  To make the initial determination of reasonable attorneys' fees, "the court must rely on the lodestar method, in which the 'attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable rate.'" *Johnson v. U.S. Mortg. Co.*, 991 F. Supp. 1302, 1307-08 (M.D. Ala. 1997).  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Id*. at 1308 (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)).

Turning to the facts here, Mulkey does not challenge that he guaranteed to

pay attorney fees;[4] instead, he contends only that "Plaintiff's claim for attorneys fees should be denied in that it has failed to submit sufficient evidentiary materials in support of the request."  Doc. 19 at 9.  The court disagrees.  To support its demand, Plaintiff provided the affidavit of Jason Woodard, a lawyer with the law firm of Burr & Forman, LLP, stating that, as of December 7, 2011, Burr & Forman has charged Plaintiff $44,432.50 in legal fees and $972.28[5] in expenses.  Doc. 17-3 at 2-3.  Mr. Woodard attests that Burr & Forman has approximately 154 hours in the case for various tasks, including drafting the Complaint and filing motions for entry of default, default judgment, and for summary judgment.  Because the court finds that the total hours worked are reasonable in light of the pleadings Plaintiff filed and that the hourly rates are consistent with the rates for similar work in the prevailing legal market, the court awards Plaintiff attorneys' fees and costs in the amount of $45,404.78, through December 7, 2011.  The court **ORDERS** Plaintiff to submit by 5 p.m. on July 27, 2012, the updated time and billing entries for any legal fees and expenses it has occurred since December 7, 2011.  Mulkey's

---

[4] The Guaranty Agreements state that Mulkey "agrees to pay, on written demand by [Plaintiff], all costs incurred by Lender in collecting any amount payable under this Guaranty or enforcing or protecting its rights under the Guaranty . . . . Such fees and expenses include, . . . reasonable fees for attorneys, paralegals and other hired processionals . . . ."  Doc. 17-1 at 142.

[5]The expenses include photocopying, filing fees, long distance telephone charges, mileage, fees for title work, publication fees, and postage.  Doc. 17-3 at 2-3.

objections to the updated time and billing entries, if any, are due by 5 p.m. on July 30, 2012.

### D.  Mulkey's Affirmative Defenses Do Not Create Questions of Fact

Finally, Mulkey opposes summary judgment on the basis that his affirmative defenses (alleged failure to mitigate, cooperate, and offer a reasonable bid price at foreclosure) create questions of fact.  Doc. 19 at 5.  The court addresses each defense below.

### 1. Mitigation of Damages and Failure of Cooperation Defenses

Mulkey contends that Capmark failed to mitigate its damages and cooperate because "CV Apartments had made all required payments under the Loan as they became due and all of the pre-approved loan proceeds had not been released.  As a result, CV Apartments was prevented from finishing 52 condominium units, which would have only cost an additional $550,000-650,000 to complete . . . . The project would have been **much** more valuable and could have saved CV Apartments, and more importantly, Plaintiff significant sums of money if completed."  Doc. 19 at 6 (emphasis in original).  Moreover, Mulkey contends that even though there "had been no payment default, Capmark refused to fund a $675,000 draw for work and labor performed on the project . . . . Because of

Plaintiff's refusal to continue to fund draws and improperly freezing the Loan proceeds, Plaintiff's damages significantly increased." *Id.*

First, as a threshold matter, the court notes that the concept that "'one who asserts the existence of a fact material to an issue in a case assumes the burden of proof' extends to affirmative defenses." *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550-51 (11th Cir. 1990). In that regard, while Mulkey makes many allegations about how Capmark purportedly failed to mitigate its damages and cooperate by refusing to release money when no default had purportedly occurred, Mulkey failed to provide any supporting documents for his assertions. The court refuses to deny summary judgment based solely on unsubstantiated allegations.

Second, the failure to mitigate and cooperate defenses fail also because they have no basis in fact. For example, contrary to Mulkey's contention that Capmark stopped funding the loan even though CV Apartments never defaulted, on August 15, 2011, the court entered a default judgment finding that on "February 16, 2009, April 28, 2010, and June 17, 2010, Capmark notified CV Apartments of the Performance Deficiency Satisfaction Amounts due under the Loan Agreement, demanded immediate deposit, and when CV Apartments failed to comply, invoked the default provision." Doc. 14 at 4. Critically, the Loan Agreement provided that in the event of default, Capmark may, at its option, initiate proceedings for the

complete or partial foreclosure of the property and may sell the property as an entirety or in parcels or units.  Doc. 17-1 at 69.  Moreover, the Loan Agreement provided that Capmark "shall have no obligation to advance any Note B Advance at any time during which an Event of Default exits . . . ."  Doc. 17-1 at 19. Consequently, Mulkey's contentions that Capmark failed to mitigate its damages and cooperate when it refused to release loan proceeds overlooks the basic fact that CV Apartments defaulted on the loan as early as February 2009. Significantly, as Mulkey acknowledges, Capmark waited four months to "freeze" the loan after the default.  Doc. 14 at 4; doc. 19-1 at 3.  This four month period belies Mulkey's contention that Capmark failed to mitigate or cooperate.

Furthermore, the rule of mitigation does not apply "where the injured party, in an effort to minimize the loss, would be required to incur considerable personal risk or expense with but a slight chance of an alternative recovery."  *Avco Fin. Servs., Inc. v. Ramsey*, 631 So. 2d 940, 943 (Ala. 1994).  Indeed, it is unreasonable to expect Capmark to continue to disburse funds *after* CV Apartments failed to make its obligated payments and still owed $10,904.461.15 on the loan.  Finally, Plaintiff's decision to exercise its rights under the Loan Agreement by conducting a foreclosure sale, which raised $6,250,000.00, doc. 14 at 5; doc. 17-1 at 7, shows also that Plaintiff attempted to mitigate its damages prior to initiating a lawsuit.

Thus, Capmark and Plaintiff properly mitigated their damages and cooperated and Mulkey's contentions to the contrary fail as a matter of law.

### 2. The Low Foreclosure Bid Defense

Mulkey asserts next that summary judgment is not warranted because "the foreclosure bid price of the property in question was so low as to shock the conscience." Doc. 19 at 6. To support this contention, Mulkey states that the $6,250,000 bid was only 62.5% of what the "total value of the property could have been if the Lender had made available the funds to complete the remaining units and those units were leased at the same percentage as the other 218 units." Doc. 19 at 6. Again, Mulkey fails to present evidence to support his contention and, as such, failed to meet his burden. *See Thorsteinsson*, 891 F.2d at 1550-51. Moreover, Mulkey's calculation is based on his subjective view of what the value of the property "*could have been*," rather than on the actual value of the unfinished units. Put differently, Mulkey's subjective valuation ignores the reality that bidders typically factor into their bid price the existing state of a project and the additional amount they believe will be necessary to complete the project. In other words, the bid price Plaintiff accepted may well have been the actual value of the unfinished project. Furthermore, as stated previously, the contention that Plaintiff failed to factor in what the value "could have been" overlooks that a lender has no

obligation to continue to fund a project when the borrower is in default.  *See Avco*

*Fin. Servs., Inc.*, 631 So. 2d at 943.

In the final analysis, Mulkey's opinion about what the value "could have

been" is insufficient to prove that "the amount paid by [Plaintiff] was less than fair

market value.  Furthermore, even if a reasonable inference could be drawn from

[Mulkey's assertions] that the amount paid by [Plaintiff] . . . was less than [the]

fair market value, [the court can] not conclude that the amount paid was so

inadequate as to raise a presumption of fraud, unfairness, or culpable

mismanagement."  *Breen v. Baldwin Cnty Fed. Sav. Bank*, 567 So. 2d 1329, 1333

(Ala. 1990).  Indeed, as the Alabama Supreme Court has stated, "in general a price

less than one-third of the value of the land will be regarded as grossly inadequate,

but, of course, there is no definite rule . . . ." *Hayden v. Smith*, 113 So. 293, 295

(Ala. 1927).  Moreover, when

> the lender acquired the property for 20%, 30%, or 66% of its fair
> market value, depending on the appraisal used . . . . the choice of
> percentage is not as determinative in the end as the observation that
> no misconduct tainted the auction. [Thus,] [t]he pleadings in the
> district court created no genuine issue as to the propriety of the sale or
> the adequacy of the notice. . . . In the absence of any issue of
> impropriety, this sale must stand. The trial court did not err in
> concluding the sale price did not shock the judicial conscience.

*CS Assets, LLC v. West Beach, LLC*, 370 F. App'x 45, 46 (11th Cir. 2010).

Ultimately, Mulkey raises no issue of impropriety that casts doubt on the bid process.  Absent any misconduct, as a matter of law, a bid price at 66% of Mulkey's valuation figure belies Mulkey's contention that the "bid price . . . was so low as to shock the conscience."  Doc. 19 at 6; *see also Breen*, 567 So. 2d at 1333; *CS Assets*, 370 F. App'x at 46.  Accordingly, Mulkey's low foreclosure bid affirmative defense also fails as a matter of law.

## E. Defendant Had Ample Opportunity to Complete Discovery

Finally, Mulkey contends that the court should deny summary judgment because "although initial disclosures and written discovery requests to Mulkey have been completed, Mulkey has not yet submitted written discovery to Plaintiff as the discovery deadline does not expire until January 31, 2012."  Doc. 19 at 10. In other words, Mulkey wants the court to grant him more time to conduct discovery.  The court declines to do so because at the time Plaintiff filed its motion, Mulkey had not requested any discovery from Plaintiff or scheduled any depositions, even though the period for discovery commenced on June 17, 2011. Moreover, Mulkey responded to the motion for summary judgment on December 28, 2011, one month before the discovery deadline.  The court finds it difficult to believe that Mulkey intended to conduct his entire discovery in the last month of the discovery period.  The court believes, instead, that Mulkey concluded that he

needed no discovery in this case since he does not dispute that he signed the Guaranty Agreements.  Alternatively, even if the court is incorrect, the court declines to extend the discovery period because Mulkey had ample time to complete discovery or move for an extension, and nothing precluded Mulkey from conducting discovery in the month remaining after he filed his response and subsequently supplementing his opposition to include any pertinent information he discerned in discovery.  In the final analysis, Mulkey's failure to conduct any discovery is not a proper basis for this court to deny Plaintiff's motion, especially since the basic facts here – CV Apartments' default, Mulkey's guarantees, and Mulkey's failure to satisfy his obligations  – are not in dispute.

## IV.  CONCLUSION

Based on the record before it, there are no genuine issues of disputed fact. Therefore, Plaintiff's motion for summary judgment is due to be **GRANTED**.  The court will issue a separate order granting the motion and dismissing this case.

**DONE** this 26th day of July, 2012.

_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE